## No. 15,928.

### NORTH STERLING IRRIGATION DISTRICT *v.* RIVERSIDE RESERVOIR AND LAND COMPANY.

(200 P. [2d] 933)

Decided November 15, 1948. Rehearing denied December 20, 1948.

Mr. WILLIAM R. KELLY, Mr. E. TYNDALL SNYDER, Mr. JOHN R. CLAYTON, for plaintiff in error.

Mr. GEORGE A. EPPERSON, Mr. ROBERT G. SMITH, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

ON May 9, 1944, a decree in water adjudication proceedings was entered by the district court in favor of the North Sterling Irrigation District, plaintiff in error here, which is the owner of North Sterling Reservoir, by which there was adjudicated to said reservoir, priorities for storage of water therein, as follows: "By reason of storage at greater depth and application to beneficial use it is now adjudged and decreed that there is made final said priority No. 53-A in Weld, Morgan and Washington Counties, dating from June 15, 1908, for storage in said reservoir of the total amount of forty-six feet (46') in depth above the base of its outlet tube, being an estimated capacity of 72,566 acre feet, to be diverted from the South Platte River at the rate of 300 cubic feet per second into its inlet, and there is made final said priority No. 79 in Weld, Morgan and Washington Counties, dating from August 1, 1915, to the extent that it shall be diverted into said reservoir at the rate of 411 cubic feet per second additional; and further, upon showing of diversion and storage to a greater amount in depth up to a storage depth of 49 feet above the base of its outlet tube (inadvertently stated in said

decree of January 13, 1936, as 46 feet), to an estimated capacity of 84,000 acre feet, and upon showing of application thereof to beneficial use within a reasonable time, said reservoir will be entitled to have said priorities made final for such greater storage depth to be related to whichever of said two Priority numbers shall appear proper under the circumstances shown at such later date."

Thereafter, April 30, 1946, The Riverside Reservoir & Land Company, defendant in error, owner of reservoir priority No. 77, dated October 25, 1910, made application to reopen, review and set aside said 1944 decree. The trial court finding "good cause shown" therefor, granted reargument and review of the above decree, with the privilege of introducing additional evidence if the parties so desired. After an extended hearing, the court found, inter alia:

"It does appear that the depth of available stored water in the reservoir did in fact reach 46.0 feet on April 22, 1944, with estimated and rated capacity of 72,560 acre feet, but that at the date of the 1944 decree, which decree was based upon that storage, that water had not yet been applied to use. In the latter respect the Decree was premature, although other water more than equivalent had theretofore been beneficially used during other seasons. However that fact is not at the present date of particular importance, because that water has since been beneficially used, and a proper decree may now be entered.

"But serious and controlling questions appear as to that 46.0 feet of water concerning its sources, river diversion rate, and the period of that storage. Some part and at least the storage resulting from the 1.99" precipitation April 16-21, 1944, was not from the river and not under either of the priorities in question. During some part of that storage the diversion rate from the river was in excess of 300 c. f. s., and such excess must be credited to priority other than No. 53-A. And, since

our decree must be on the basis of one fill in one year or the capacity attained by one season of storage, the actual maximum amount in storage at a given date is not necessarily controlling. Carry-over from a previous season cannot be credited to the following season for adjudication purposes. In these respects the testimony on May 9, 1944, was not specific, and the resulting decree was in error."

The court further found that the amount of water in storage, which was "not from the river" was 2000 acre feet; that the amount diverted from the river at a rate "in excess of 300 c. f. s." and stored, was 846 acre feet; and that the amount of storage carried over from the previous season was 7040 acre feet.

In accordance with its findings, the court entered an amended decree March 17, 1947, reducing the maximum depth of storage from 46.0 feet above the base of the outlet tube of the reservoir, as provided in the 1944 decree, to 42.2 feet and reduced the volume of water to be stored from 72,566 acre feet, as fixed by the 1944 decree, to 62,406 acre feet. Plaintiff in error seeks a reversal of this judgment.

██ At the outset it is contended by plaintiff in error that the trial court erred in reopening the 1944 water adjudication decree and granting reargument pursuant to the provisions of section 187, chapter 90, '35 C.S.A. (section 189 [16] '47 Supp. C.S.A.). We have consistently held that with respect to the reopening of such decrees, much discretion is lodged in the trial court, and that where its discretion is not abused, its findings and conclusions will not be disturbed on review. *Martinez v. San Luis Co.*, 99 Colo. 35, 58 P. (2d) 1220. In the present case we find no abuse of discretion.

Counsel for plaintiff in error, in their briefs, concede that water in storage which is not diverted from the river, and that which was diverted from the river at the excessive rate, is "not attributable to priority 53-A."

██ The principal question presented is whether or

not carry-over water from a previous season can be credited to the following season for adjudication purposes. In other words, Is a reservoir entitled to credit for water applied to a beneficial use in 1944 which was diverted and stored in 1943? The trial court disallowed such credit because, as it stated, "Our decree must be on the basis of one fill in one year or the capacity attained by one season of storage * * *."

*Windsor Reservoir & Canal Co. v. Lake Supply Ditch Co.,* 44 Colo. 214, 223, 98 Pac. 729, is cited in support of the trial court's conclusion. The question presented in that case, as stated by Justice Campbell, "Is whether, during the same season and before junior reservoirs are filled once, a senior reservoir may, under the statute, have a decree allowing more than one filling on the same priority or appropriation of water for storage."

The decision in the Windsor Reservoir & Canal case is not helpful as there is no contention in the present action that the North Sterling reservoir is entitled on its priority 53-A to more than one filling each year from the river. As above stated, the question here presented is whether or not said reservoir is entitled to credit for adjudication purposes carry-over water stored in previous seasons.

The Riverside Company contends that credit on said priority 53-A is limited for adjudication purposes to the amount of water actually diverted, stored, and applied in any one season or calendar year, and that no credit may be given for such carry-over water. We have been unable to find in statute or decision any support for this contention. Such a rule, if adopted, would not only invite waste, discourage conservation of water, and destroy the value of later reservoirs, but also would reduce the incentive for investing funds for the construction of reservoirs in the future, and be contrary to public policy.

A "storage water right" is defined by statute to mean, "The right of impounding water for future beneficial

use." '35 C.S.A., chapter 90, section 189 (1), (1947 Supp.). There is nothing in the statutes which limits the beneficial use of water for adjudication purposes to the particular year in which it was diverted and stored. If it is applied to a beneficial use within a reasonable time, in absence of a statute to the contrary, such use is sufficient to meet the requirements of the law.

This is especially true in this case, since the decree next preceding that of 1944, entered January 13, 1936, after fixing the amount of storage allowable under priorities 53-A and 79, expressly provides: "That said reservoir will be entitled, upon showing of diversion to a greater amount up to a storage depth of forty-nine (49) feet, or a total of 84,000 acre feet of water stored in its reservoir above the base of its outlet tube, and application thereof to beneficial use, *within a reasonable time*, to such greater amount of diversion to be related to whichever of its two priorities shall appear proper under the circumstances shown at such later time." (Italics supplied)

Previous decrees entered January 5, 1922, and May 25, 1925, contained similar provisions. It is significant that in neither of said decrees is it provided that water diverted by an appropriator in one season must be applied to beneficial use within the same season in order to entitle it to receive credit therefor.

We conclude that water stored under a reservoir priority in one season need not be withdrawn from said reservoir during the same season in order that proper credit may be received for adjudication purposes; that all of the requirements of the law are fulfilled when the water is applied to a beneficial use within a reasonable time after storage; that the water involved herein was applied to a beneficial use within a reasonable time for which proper credit should be given on priority No. 53-A; and that said decree thereafter, as to said priority, be made final; that the final portion of the decree, with respect to priority No. 79, should be vacated and

56

the conditional portion thereof retained in full force and effect.

The judgment of the trial court is affirmed in part, reversed in part, and the cause remanded with instructions to modify the decree in conformity with the conclusions announced herein.